UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------- x
UNITED STATES OF AMERICA,        :
                                        :
        -against-            :
                                        :
MICHAEL ROMANO AND WILLIAM     :
KEARNEY,                          :
                                        :
                  Defendants.    :
-------------------------------------------------------- x

**MEMORANDUM AND ORDER
ADOPTING REPORTS AND
RECOMMENDATIONS**

**09-cr-00168 (S-2) (DLI) (VMS)**

**DORA L. IRIZARRY, United States District Judge:**

On July 27, 2015, the Court of Appeals for the Second Circuit remanded this case for a *de novo* review of two Reports and Recommendations ("R&Rs") by a magistrate judge of this Court concerning restitution and forfeiture against Defendants Michael Romano ("Romano") and William Kearney ("Kearney") (collectively, "Defendants"). *See*, *United States v. Romano*, 794 F.3d 317, 321 (2d Cir. 2015); Second Circuit Mandate issued November 6, 2015, Dkt. Entry Nos. 435-437. For the reasons set below, upon review of the R&Rs *de novo* with respect to Defendants' objections and the remainder of the R&Rs for clear error, the objections are overruled and, not finding any clear error, both R&Rs are adopted in their entirety.

## I.     BACKGROUND AND PROCEDURAL HISTORY

The Court presumes familiarity with the facts and procedural history of this case, and only those facts relevant to the disposition of the motions are repeated herein.[1] On November 10, 2010, a second superseding indictment, returned by a grand jury of this district, was filed against Defendants and other named individuals, charging them with conspiracy to commit mail and wire fraud in violation of 18 U.S.C. § 1349 and conspiracy to commit money laundering in violation of

---

[1] For a more complete recitation of the facts and procedural history, see, *United States v. Romano*, 859 F. Supp.2d 445, 451 (E.D.N.Y. 2012) ("*Romano I*") and *Romano*, 794 F.3d at 321 ("*Romano II*").

18 U.S.C. §§ 1956(h), 1956(a)(1)(A)(i), 1957(b), and 1957(d)(1).  *See*, Dkt. Entry No. 168.  Each of these counts was accompanied by a criminal forfeiture allegation.  *Id.*  Specifically, Forfeiture Count One related to conspiracy to commit mail and wire fraud in violation of 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).  *Id.* at ¶¶ 21-22.  Forfeiture Count Two related to conspiracy to commit money laundering, seeking forfeiture in accordance with 18 U.S.C. § 982(a)(1).  *Id.* at ¶¶ 23-24.

The charges arose out of the operation of three companies owned by Romano:  Wall Street Rare Coins ("WSRC"), Atlantic Coin Galleries ("ACG"), and Northeast Gold and Silver ("NEGS") (collectively, "the Romano Companies").  *Id.*  Kearney was a salesperson and sales manager at all three businesses and a fifty percent owner of NEGS.  *Id.*  Through the Romano Companies, Defendants engaged in a telemarketing scheme whereby they sold coins at highly inflated prices by using falsely represented value of the coins.  Defendants also conspired to launder the proceeds of this illegal activity.  *Id.*

On June 13, 2011, Defendants were convicted after a five-week jury trial before the Honorable Joseph F. Bianco, then a district judge of this Court, of conspiracy to commit mail and wire fraud and conspiracy to commit money laundering.[2]  *See*, Jury Verdict, Dkt. Entry No. 295.  At trial, the Government called nine victims to testify about their experiences as targets of Defendants' telemarketing scheme.  *See*, Trial Transcript ("Tr.") at 2518-19, 2521-22.  The Government also called as witnesses several former sales representatives of the Romano

---

[2] On October 19, 2012, Judge Bianco recused himself from this case.  *See*, Dkt. Entry No. 345.  By Electronic Order issued on October 25, 2012, the Honorable Sterling Johnson, Jr., Senior United States District Judge, was assigned to preside over this case.  Consistent with the Second Circuit's decision in *Romano II*, the case was remanded back to Judge Johnson.  *See, Romano II* at 341.  By Electronic Order issued on November 16, 2016, this case was reassigned to this Court for further proceedings consistent with the remand order.  *See*, November 14, 2016 Docket Order.

Companies, suppliers, government investigators, and three coin grading experts.  *Id.* at 843:18, 879:23.

The Government proved, *inter alia*, that Defendants conspired to devise and execute their fraudulent scheme, which involved calling prospective purchasers and inducing them to purchase coins by falsely representing their quality.  *See*, *e.g.*, Tr. at 550-51, 845-56, 1146.  Defendants further falsely conveyed that the three companies would aid any buyer in reselling the coins at a profit.  *Id.* at 552-53, 1518-19, 1838.  Over the course of the Romano Companies' operations, $32,220,617 in gross proceeds passed through their accounts.  *See*, *e.g.*, *Id.* at 2518-2519, 2521-2522.  Defendants laundered the fraud proceeds through at least seventy-four money transfers of $10,000 or more from the Romano Companies' operating accounts to their own personal accounts. *See*, Dkt. Entry Nos. 362-1, 362-2.  After the jury returned its verdict, Defendants waived their right to a jury determination on the issue of forfeiture, electing to have the Court decide the issue. *See*, Dkt. Entry No. 348, at 2.

On December 28, 2012, Defendants moved before Judge Johnson to recuse the prosecutor in the case, to dispense with restitution as it could not be calculated under any reliable or workable rubric, and for a hearing on forfeiture issues where the Government's definition of proceeds should be limited and the Government should be held to a burden of proof higher than the preponderance standard.  *See*, Defs.' Mot. for Recusal of AUSA Gatz and Other Relief, Dkt. Entry No. 347.  The Government opposed the motion.  *See*, Resp. in Opp'n, Dkt. Entry No. 348.

On January 17, 2013, Judge Johnson referred the recusal motion to the Honorable Vera M. Scanlon, United States Magistrate Judge, for the issuance an R&R.  *See*, Minute Entry dated January 17, 2013.  While the January 17, 2013 Minute Entry reflects only referral of the recusal motion to the magistrate judge, it is apparent from subsequent docket entries, filings, and events

3

that the forfeiture and restitution issues also were referred to the magistrate judge, who then set briefing schedules for separate forfeiture and restitution motions, requiring the Government to file the opening briefs.  *See*, Scheduling Order as to Forfeiture dated April 10, 2013; Scheduling Order as to Restitution dated April 10, 2013; *See also*, Mot. for Forfeiture, Dkt. Entry No. 355; Mot. for Restitution, Dkt. Entry No. 377.

The Government requested forfeiture of an amount totaling $32,220,617.  *See*, Mot. for Forfeiture.  The Government also requested forfeiture of specific properties, including various bank accounts and real property owned by Romano at 8154 Via Bolzano, Lake Worth, Florida ("8154 Via Bolzano"), and by Kearney at 8 Valerie Place, East Islip, New York ("8 Valerie Place").  *Id.*  Additionally, the Government requested an order directing Defendants to pay restitution to 220 identified victims of their coin fraud scheme, in an amount totaling $9,332,667.10.  Motion for Restitution, Dkt. Entry No. 377.

By separate R&Rs issued on July 26, 2013 and December 17, 2013, respectively, the magistrate judge recommended that the district judge grant the Government's requests for the forfeiture and restitution orders.  *See*, Forfeiture R&R dated July 26, 2013, Dkt. Entry No. 373; Restitution R&R dated December 17, 2013, Dkt. Entry No. 393.  Romano timely objected to both R&Rs and Kearney timely objected to the Forfeiture R&R only.  *See*, Romano's Forfeiture Objection ("Romano Forfeiture Obj."), Dkt. Entry No. 375; Kearney's Forfeiture Objection ("Kearney Forfeiture Obj."), Dkt. Entry. No. 376; Romano Restitution Objection ("Romano Restitution Obj."), Dkt. Entry No. 396.  The Government responded to Romano's and Kearney's Forfeiture objections.  *See*, Government's Response to Defendants' Forfeiture Objections ("Gov't Resp."), Dkt. Entry No. 378.

On February 27, 2014, Judge Johnson sentenced Romano to 240 months' incarceration followed by five years of supervised release with conditions. *See*, Minute Entry dated February 27, 2014. On March 10, 2014, Judge Johnson sentenced Kearney to 156 months' imprisonment followed by three years of supervised release with conditions. *See*, Minute Entry dated March 10, 2014. At the time of Romano's sentence on February 27, 2014, Judge Johnson also summarily adopted both the Forfeiture and Restitution R&Rs and ordered Defendants, jointly and severally, to pay restitution in the total amount of $9,139,727.10 and to forfeit $32,220,617. *See*, Minute Entry dated February 27, 2014. During Kearney's sentencing on March 10, 2014, Judge Johnson noted, without explanation, that the adjudged restitution amount "will be less than the amount indicated in the Report and Recommendation by the Magistrate Judge," resulting in a restitution amount totaling $9,139,727.10 rather than $9,332,667.10, which was the amount recommended in the Restitution R&R. *See*, Minute Entry dated March 10, 2014; *See also*, Restitution R&R, at 72.

On March 10, 2014 and March 21, 2014, Judge Johnson signed the forfeiture orders as to Kearney and Romano, respectively. *See*, Forfeiture Order dated March 10, 2014, Dkt. Entry No. 407; Forfeiture Order dated March 21, 2014, Dkt. Entry No. 402. The Clerk of Court entered judgments against Defendants in accordance with Judge Johnson's orders. *See*, Judgment dated March 21, 2014, Dkt. Entry No. 403; Judgment dated April 7, 2014, Dkt. Entry No. 408. Defendants appealed the judgments to the Second Circuit. *See*, Notice of Appeal by Romano dated March 24, 2014, Dkt. Entry No. 405; Notice of Appeal by Kearney dated April 7, 2014, Dkt. Entry No. 401.

On appeal, the Second Circuit affirmed both convictions and the sentences imposed, rejecting Defendants' challenges to various evidentiary rulings and the sentences imposed by the trial court. *See generally*, *Romano II* and at 341. However, the Second Circuit vacated the

restitution and forfeiture orders because the record did not establish that the district court gave the R&Rs proper consideration based on Defendants' objections.  *Id.* at 340-341.  Accordingly, the Second Circuit remanded only those matters to this Court to conduct a *de novo* review of the magistrate judge's R&Rs.  *Id.* at 341.

## II.     <u>LEGAL STANDARD</u>

When a party objects to a report and recommendation, a district judge must make a *de novo* determination with respect to those portions of the report and recommendation to which the party objects.  *See*, Fed. R. Crim. P. 59(b)(3); *United States v. Male Juvenile*, 121 F.3d 34, 38 (2d Cir. 1997).  If, however, a party makes conclusory or general objections, or attempts to relitigate the party's original arguments, the court will review the report and recommendation for clear error. *See*, *Robinson v. Superintendent, Green Haven Corr. Facility*, 2012 WL 123263, at *1 (E.D.N.Y. Jan. 17, 2012) (quoting *Walker v. Vaughan*, 216 F. Supp.2d 290, 292 (S.D.N.Y. 2002)).  The district court may then "accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Crim. P. 59(b)(3); *See also*, 28 U.S.C. § 636(b)(1).

Sentencing courts may consider trial evidence in deciding questions relating to forfeiture. *See*, *United States v. Capoccia*, 503 F.3d 103, 109 (2d Cir. 2007); *See also*, Fed. R. Crim. P. 32.2(b)(1).  Moreover, once a defendant is convicted of an offense beyond a reasonable doubt, the government then is required to establish forfeiture only by a preponderance of the evidence.  *See*, *United States v. Bellomo*, 176 F.3d 580, 595 (2d Cir. 1999).  Significantly, in this case, both Defendants' convictions were affirmed by the Second Circuit.

Notably, both Romano and Kearney failed to object to the forfeiture of specific property before the magistrate judge.  "Whether a party may raise a new legal argument or present an entire

previously unasserted cross-motion or opposition, for the first time in objections to an R&R has

not yet been decided in this Circuit." *Amadasu v. Ngati*, 2012 WL 3930386, at *5 (E.D.N.Y. Sept.

9, 2012) (citation omitted); *See also*, *Contreras v. Wal-Mart Stores East, LP*, 2020 WL 1429473,

at *7 (E.D.N.Y March 24, 2020)(Adopting Magistrate Judge's Report and Recommendation, 2019

WL 7599888(E.D.N.Y. November 12, 2019)).  Whether or not this Court should consider any new

arguments made in objections to a report and recommendation that were not presented to the

magistrate judge, the following factors have been considered:

> (1) the reason for the litigant's previous failure to raise the new legal
> argument; (2) whether an intervening case or statute has changed the
> state of the law; (3) whether the new issue is a pure issue of law for
> which no additional fact-finding is required; (4) whether the resolution
> of the new legal issue is not open to serious question; (5) whether
> efficiency and fairness militate in favor or against consideration of the
> new argument; and (6) whether manifest injustice will result if the new
> argument is not considered.

*Id.* (citing *Amadasu* at *5, internal citations and quotations omitted).  While none of these factors

militate in favor of this Court's consideration of Defendants' new arguments that were not made

before the magistrate judge, nonetheless, upon review of Defendants' belated objections, this Court

finds that they lack merit and are overruled.

## III.   **DISCUSSION**

With respect to forfeiture, the magistrate judge concluded that such an order could be

justified on two grounds.  *See*, Forfeiture R&R, at 2, 47-49.  First, under 18 U.S.C. § 981(a)(2)(A),

the magistrate judge found that the requested $32,220,617 constitutes gross proceeds "obtained

directly or indirectly" as a result of Defendants' commission of mail and wire fraud conspiracy.

*Id.* at 2.  Second, under 18 U.S.C. § 982(a)(1), the magistrate judge also found that the same amount

was property "involved in" Defendants' conspiracy to commit money laundering.  *Id.*  In addition,

the magistrate judge recommended granting the Government's request for a forfeiture order naming specific property seized from Defendants.  *Id.*

Concerning restitution, after review of the parties' briefs and holding a hearing at which witnesses testified, the magistrate judge recommended that restitution be ordered in the amount of $9,332,667.10 pursuant to the Mandatory Victims Restitution Act of 1996 ("MVRA"), 18 U.S.C. §§ 3363A, 3664.  *See*, Restitution R&R, at 1-2.

 The Court reviews the R&Rs *de novo* with respect Defendants' objections and reviews the remainder of the R&Rs for clear error.  Upon due consideration and review, and for the reasons set forth below, the Court overrules the objections and finds no clear error as to the uncontested portions of the R&Rs.  Accordingly, the R&Rs are adopted in their entirety.

### A.  **Forfeiture**

Property is subject to forfeiture if it stems from proceeds traceable to "specified unlawful activity."  18 U.S.C. § 981(a)(1)(C). "Specified unlawful activity" is defined as offenses and conspiracies to commit such offenses listed in 18 § U.S.C. 1961(1).  *See*, 18 U.S.C. § 1956(c)(7)(A).  Both mail and wire fraud are listed in Section 1961(1).  *See*,  18 U.S.C. § 1961(1). Therefore, as Defendants' convictions for conspiracy to commit mail and wire fraud are "specified unlawful activity," the traceable proceeds of their fraud are subject to forfeiture.

18 U.S.C. § 982 provides for forfeiture based on Defendants' money laundering conspiracy conviction.  Section 982 governs the entry of forfeiture judgments in money laundering cases. Section 982(a)(1) provides that 'the court in imposing sentence on a person convicted of an offense in violation of section 1956 . . . shall order that the person forfeit to the United States any property, real or personal, involved in such offense, or any property traceable to such property."  *United States v. Bermudez*, 413 F.3d 304, 306 (2d Cir. 2005).  As Defendants also have been convicted of

money laundering conspiracy under 18 U.S.C. § 1956(h), forfeiture is appropriate under Section 982(a)(1).

In accordance with the foregoing statutory provisions, the magistrate judge recommended the entry of a forfeiture order totaling $32,200,617 in gross proceeds based on Defendants' convictions for conspiracy to commit mail and wire fraud and money laundering conspiracy. Forfeiture R&R, at 47-49. The magistrate judge also recommended that Romano forfeit various bank accounts and the premises located at 8154 Via Bolzano, Lake Worth, Florida.[3] *Id.* at 40-43. The magistrate judge further recommended that Kearney forfeit: (1) certain bank accounts held by Kearney; (2) bank accounts held by Kearney's wife; and (3) 8 Valerie Place, East Islip, New York.[4] *Id.* at 44-47.

### i.   Romano's Objections

Romano raises three specific objections concerning the magistrate judge's forfeiture recommendations: (a) that the magistrate judge erred in finding that the fraud included all 1500 customers of the Romano Companies; (b) that the magistrate judge erred in relying on a "facilitation theory" in a money laundering context; and (c) that the Government did not meet its burden of proof over the forfeiture of real property located at 8154 Via Bolzano. Upon *de novo* review of these objections, they are overruled for the reasons set forth below.

---

[3] William Hessle ("Hessle"), a United States Department of Justice investigator, lists these specific accounts in his sworn declaration ("Hessle Decl."): Citibank, Account # 66435154; JP Morgan Chase, Accounts #s 3421140025, PXS-616192, 737707158; Fidelity Investments, Account # X26361585; ING Direct, Account # 35543264; Smith Barney, Account # 42F-2702C-12; Wachovia Securities, Account #s 6395-0113, 4671-2430, 4671-2458; and HSBC, Account # 976085471. *See*, Hessle Decl., Dkt. Entry No. 355-7.

[4] The Kearney accounts are listed in the Hessle Decl. at ¶ 8 as: Citibank, Accounts #s 66435322, 66435154; JP Morgan Chase, Accounts #s PXS-616192, 737707158; Fidelity Investments, Account # X26361585; ING Direct, Account # 35543264; Smith Barney, Account # 42F-2702C-12; Wachovia Securities, Account #s 6395-0113, 4671-2430, 4671-2458; and HSBC, Account # 976085471. The bank accounts of Kearney's wife are: Astoria Federal Savings Bank, Account #s 8310085512, 9000207905, and 9000342915. *Id.* at ¶ 9(a).

Romano also raises certain general objections. *See*, Romano Forfeiture Obj. at 1-2. However, "[o]bjections to a Report and Recommendation are to be 'specific and are to address only those portions of the proposed findings to which the party objects.'" *Williams v. New York State Office of Mental Health*, 2018 WL 6584904, at *5 (E.D.N.Y. Dec. 14, 2018) (internal citation and quotation omitted). Thus, "[w]hen a party makes only conclusory or general objections, or simply reiterates the original arguments, the Court will review the report strictly for clear error." *Id.* (internal citations omitted). As such, these general objections have been reviewed under a clear error standard and have been found to be without merit.

### a.  Scheme and Pervasiveness of the Fraud

Romano argues that it is inappropriate to view all of the gross sales receipts as "proceeds" of the conspiracy. However, forfeiture "focuses on the disgorgement by a defendant of his ill-gotten gains. Thus, the calculation of a forfeiture amount in criminal cases is usually based on the defendant's actual gain." *United States v. Contorinis*, 692 F.3d 136, 146-47 (2d Cir. 2012). If "the conviction itself is for executing a scheme, engaging in a conspiracy, or conducting a racketeering enterprise, the government need only establish that the forfeited assets have the 'requisite nexus,' to that scheme, conspiracy, or enterprise." *See*, *United States v. Capoccia*, 503 F.3d 103, 117-18 (2d Cir. 2007). Defendants' conspiracy conviction provides the requisite nexus between the Romano Companies' gross sales receipts and the fraudulent scheme. Specifically, the Government's prosecution was premised on Defendants having devised and executed a scheme to defraud the Romano Companies' customers. *See*, Second Superseding Indictment, Dkt. Entry No. 168, at ¶ 18; Jury Instructions, Ex. F, Dkt. Entry No. 291; Jury Verdict, Dkt. Entry No. 295; *See also*, *Romano I*, at 451. Consequently, the entirety of the proceeds of Defendants' scheme are

subject to forfeiture.  Romano's objections to the use of the gross sales receipts of the Romano Companies as "proceeds" of the conspiracy, thus, are overruled.

### b.  Facilitation Theory and Money Laundering

Romano further argues that the magistrate judge incorrectly relied on a facilitation theory in granting the Government's request for forfeiture.  As discussed above, 18 U.S.C. § 982 governs the entry of forfeiture judgments in money laundering cases.  Specifically, Section 982(a)(1) provides that proceeds "involved in" an offense are subject to forfeiture.  *United States v. Bermudez*, 413 F.3d 304, 306 (2d Cir. 2005).  As correctly stated in the Forfeiture R&R, the term "involved in" consistently has been interpreted broadly by courts to include any property involved in, used to commit, or used to facilitate the money laundering offense.  *See*, *United States v. Schlesinger*, 261 F. App'x 355, 361 (2d Cir. 2008); *See also*, *United States v. Nicolo*, 597 F. Supp.2d 342, 347 (W.D.N.Y. 2009) (internal quotation omitted).  "Facilitation occurs when the property makes the prohibited conduct less difficult or more or less free from obstruction or hindrance."  *United States v. Schlesinger*, 396 F. Supp.2d 267, 272 (E.D.N.Y. 2005) (internal quotation omitted).  Thus, "forfeiture of commingled funds . . . is proper when the government demonstrates that the [claimant] pooled the funds to facilitate or disguise his illegal scheme." *Nicolo*, 597 F. Supp.2d at 351 (internal quotations omitted).  Indeed, in many cases "[i]t is precisely the commingling of tainted funds with legitimate money that facilitates the laundering and enables it to continue." *United States v. Certain Funds on Deposit in Account No. 01-0-71417, Located at the Bank of N.Y.*, 769 F. Supp. 80, 84-85 (E.D.N.Y. 1991).

Romano baldly asserts that the magistrate judge incorrectly applied a facilitation theory in recommending the forfeiture without citing any support for his position.  *See*, Romano Forfeiture Obj. at 2-3.  Contrary to Romano's contention, the evidence at trial established, not just by a

preponderance of the evidence as required, but beyond a reasonable doubt, that both Defendants had control of the business accounts and transferred proceeds to their own accounts to defraud their victims in furtherance of the scheme. Consequently, Defendants' commingling and transferring of funds facilitated their money laundering conspiracy. Accordingly, Romano's objection over the use of facilitation theory to justify granting the Government's forfeiture request is overruled.

### c. Specific Forfeiture of Real Property

Finally, contrary to Romano's objections, Romano's mother's claims to 8154 Via Bolzano are barred at this stage. *See*, 21 U.S.C. § 853(k)(1) ("[N]o party claiming an interest in property subject to forfeiture under this section may intervene in a trial or appeal of a criminal case involving the forfeiture of such property under this section."); *See also*, *De Almeida v. United States*, 459 F.3d 377, 381 (2d Cir. 2006) ("An ancillary proceeding is evidently the only avenue for a post-indictment third-party claim to forfeited property."). As a result, Romano's mother may assert her interest in the property at an ancillary hearing. Thus, the Court adopts the reasoning of the magistrate judge and overrules the objection on this basis.

### ii.    Kearney's Objections

Kearney raises two objections to the Forfeiture R&R: (a) that the magistrate judge erred in applying a "gross proceeds" analysis to telemarketing schemes; and (b) that the government failed to meet its burden of proof as to the forfeiture of real property, namely the premises at 8 Valerie Place. The Court finds both objections unavailing for the reasons set forth below.

### a. Application of Gross Proceeds Analysis to Telemarketing Schemes

Kearney argues that the magistrate judge erred in applying a gross proceeds analysis to Defendants' fraudulent scheme. As discussed above, Defendants have been convicted of an

offense constituting a "specified unlawful activity."  As a result, proceeds traceable to their offense are subject to forfeiture.  Section 981(a)(2)(A) defines "proceeds" in such a way that allows for forfeiture of the gross gain realized from the offense.  In contrast, 18 U.S.C. § 981(a)(2)(B) restricts forfeiture to the net gain or profit realized from the offense.

Here, as the magistrate judge correctly found, a gross proceeds analysis applies.  Section 981(a)(2)(A) states that

> In cases involving illegal goods, illegal services, unlawful activities, and *telemarketing* and health care *fraud schemes*, the term "proceeds" means property of any kind obtained directly or indirectly, as the result of the commission of the offense giving rise to the forfeiture, and any property traceable thereto, and *is not limited to the net gain or profit realized from the offense*.

18 U.S.C. § 981(a)(2)(A)(emphasis added).  Section 981(a)(2)(A) expressly applies to cases involving telemarketing schemes.  Thus, 18 U.S.C. § 981(a)(2)(A) applies here because Defendants' convictions were based on a determination by a jury that they had engaged in a telemarketing scheme.  Kearney urges the Court to apply a net proceeds approach under Section 981(a)(2)(B) because coins are not illegal goods and are of some value.  However, such a reading ignores the plain language of the statute and renders the phrase "telemarketing and health care fraud schemes" superfluous.  The reasoning of the magistrate judge in this regard is adopted by the Court and Kearney's objection is overruled.

### b.  Specific Property

Kearney alleges that the real property at 8 Valerie Place should not be forfeited because Kearney's wife has an interest in the property.  *See*, Kearney Forfeiture Obj. at 3.  As discussed in Section III(A)(i)(c) above, such an argument is not relevant to the forfeiture of Kearney's interest in the property at 8 Valerie Place.  To the extent that Kearney's wife wishes to assert an interest in the real property, she can do so later in an ancillary hearing.

B. **Restitution**

The Government seeks $9,332,667.10 on behalf of 220 victims.  At a June 26, 2013 restitution hearing, Agent William Hessle testified about the Government's investigation into Defendants' crimes, which involved tracing bank records to identify 1,450 of Defendants' victims. *See*, Restitution Hearing Transcript ("Restitution Tr."), Dkt. Entry No. 368.  The Government then reached out to those victims to alert them of the instant prosecution and invited them to submit affidavits of loss for restitution purposes.  *Id.* at 23:18-22, 26:18-20.  Due to these efforts, the Government collected the loss affidavits of 220 victims.  *Id.* at 27:18-29:16.

The Government also asked nine of the 220 victims to submit the coins they had purchased to a professional coin grading service in order determine an average percentage of loss for the 220 victims.  *Id.* at 29:20-30:12.  The Government hired a coin expert, Anthony Swiatek, who arrived at a 21% value-to-price ratio, *i.e.*, that the victims' coins were worth 21 cents for every dollar paid. *Id.* at 2025:16-18, 2041:2-10.  Swiatek then was able to identify the victims' total losses according to various formulae based on whether a victim had sold none, some or all of his/her coins since the fraud.  *Id.* at 71:18-19; 78:1-2.

Romano objects to the restitution R&R arguing that:  (i) the grading practices of Swiatek and another coin expert, Richard Montgomery, were subjective and, thus, unreliable; and (ii) the uncorroborated sworn statements of customers cannot establish their loss for restitution purposes.[5] For the reasons set forth below, Romano's objections are overruled.

i.    **The Reliability of the Experts' Coin Grading Practices.**

Challenges to the reliability of Montgomery and Swiatek's testimony are barred by the law of the case doctrine.  The doctrine holds "that when a Court has ruled on an issue, that decision

---

[5] Kierney did not object to the Restitution R&R and, thus, waived his right to do so.  *See*, Fed. R. Crim. P. 59(b)(2).

should generally be adhered to by that court in subsequent stages in the same case." *United States v. Ucio*, 940 F.2d 753, 758 (2d Cir. 1991).  The law of the case doctrine "is implicated when a court reconsiders its own ruling on an issue in the absence of an intervening ruling on the issue by a higher court." *United States v. Quintieri*, 306 F.3d 1217, 1225 (2d Cir. 2002) (stating that, if on remand for resentencing, a different loss amount is calculated, the district court may then recalculate restitution and implying that, if the loss amount is the same on remand, the restitution order remains the law of the case).  Courts generally invoke the doctrine to refuse to reopen what has been decided, unless "cogent" and "compelling" reasons militate otherwise.  *See*, *United States v. Tenzer*, 213 F.3d 34, 39 (2d Cir. 2000).  "Cogent" and "compelling" reasons include "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Id*.

The reliability of Swiatek's and Montgomery's coin grading methodology and the admissibility of their testimony was litigated thoroughly prior to and after trial.  Prior to trial, Judge Bianco held a hearing pursuant to *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579 (1993) ("the *Daubert* hearing") at which, *inter alia*, both experts, Swiatek and Montgomery, testified.  As with the objections to the Restitution R&R, Defendants contended at the hearing that the experts' testimony was inadmissible pursuant to Federal Rules of Evidence 403 ("Rule 403") and 702 ("Rule 702") because the grading and valuation of coins was a subjective and, thus, unreliable process.  *See*, *generally*, *Romano I*, at 450-53; *Romano II*, at 330-31.  Judge Bianco orally issued an order denying Defendants' motion to preclude the experts' testimony finding the *Daubert* requirements had been satisfied and that the evidence was not excludable under Rule 403.  *Romano I*, at. 453.

At the conclusion of the trial, Defendants moved for judgments of acquittal pursuant to Federal Rule of Criminal Procedure 29 ("Rule 29") or, in the alternative, for a new trial pursuant to Federal Rule of Criminal Procedure 33 ("Rule 33"). *See*, *generally*, *Romano I; Romano II*, at 332-33. Defendants challenged their convictions claiming, *inter alia*, that the experts' testimony was inadmissible on the same grounds raised at the *Daubert* hearing. Judge Bianco denied the motions in their entirety. *See*, *generally*, *Romano I*. As to the expert testimony claims, Judge Bianco adhered to his post-hearing ruling, but supplemented it in his published Memorandum and Order. *See*, *Romano I*, at 450 n.1. Notably, Defendants again raised their expert testimony argument in their appeal challenging their judgments of conviction. The Second Circuit affirmed the convictions, rejecting their arguments on appeal. *See*, *generally*, *Romano II*. The Circuit, in a fulsome discussion of the expert testimony issue, affirmed the district judge's decision, finding no abuse of discretion by the district judge either in its decision to admit the experts' testimony or in its decision that the admission of their testimony did not warrant a new trial. *Id.* at 332-334.

Moreover, Romano has not cited to any intervening change of controlling law, the availability of new evidence, the need to correct a clear error or prevent manifest injustice, or any other cogent or compelling reason as required under *Tenzer* to justify disturbing Judge Bianco's ruling. Accordingly, Romano's objection to the admission of expert testimony is overruled and the R&R is adopted as to this issue.

### ii.    Corroboration of Loss Affidavits

Contrary to Romano's objection, the Court finds that the victims' sworn statements are sufficient to establish their loss for restitution purposes. The loss for the purpose of restitution may be estimated reasonably. *See*, *United States v. Cheng*, 96 F.3d 654, 657-58 (2d Cir. 1996) (holding that the district court drew a permissible inference to determine actual loss from the

defendant's unlawful use of food stamps, *i.e.*, that the third-party vendors receiving the food stamps cashed them in, causing Government loss).   "So long as the basis for reasonable approximation is at hand, difficulties in achieving exact measurements will not preclude a trial court from ordering restitution."  *United States v. Savoie*, 985 F.2d 612, 617 (1st Cir. 1993).  In fashioning a reasonable estimate of restitution for victims, a court must keep sight of the fact that the MVRA makes restitution mandatory in the full amount of each victims' losses.  18 U.S.C. § 3664(f)(1)(A).  To that end, there is no particular requirement that victims' losses be evidenced by itemized receipts.  *See*, *United States v. Depiazza*, 172 F.3d 38, 38 (2d Cir. 1999).

Here, the victims' affidavits of loss have sufficient indicia of reliability to support a restitution order regardless of their lack of itemized receipts or invoices.  Specifically, each affidavit states that the affiant-victim "swear[s] that the above information is true and correct."  *Id.* In addition, false statements in this context are subject to potential fines and imprisonment. *See*, 18 U.S.C. § 1001.  As such, the potential penalties faced by the affiants for submitting false information to the Court insure the reliability of the loss affidavits.  Accordingly, Romano's objection is overruled and the magistrate judge's reasoning and conclusion that the loss affidavits are sufficient for restitution purposes are adopted.

[REST OF PAGE INTENTIONALLY LEFT BLANK]

IV.    **CONCLUSION**

After conducting a *de novo* review of these portions of the R&Rs to which Defendants object, and, after finding no clear error in the remainder, the magistrate judge's thorough and well-reasoned R&Rs are adopted in their entirety.   Accordingly, forfeiture is ordered, as to both Defendants jointly and severally, in the amount totaling $32,220,617.00, and restitution is ordered as to both Defendants, jointly and severally, in the amount totaling $9,332,667.10.  Also, forfeiture is ordered as to the real property owned by Romano at 8154 Via Bolzano, Lake Worth, Florida and as to real property owned by Kearney at 8 Valerie Place, East Islip, New York .


SO ORDERED.

Dated: Brooklyn, New York
       April 29, 2021

_____ /s/
        DORA L. IRIZARRY
       United States District Judge