UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -                     CR 09-0168 (S-2)(DLI)

MICHAEL ROMANO and
WILLIAM KEARNEY

            Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - X

### RESPONSE TO MOTION FOR SUMMARY JUDGMENT

I, Claimant Karen Kearney, pro se, submit the following response to the United States' Motion for Summary Judgment.

The United States has filed a motion for summary judgment, arguing that I should forfeit the residence at 8 Valerie Place, East Islip, New York, that my former husband William Kearney ("Bill") and I bought in November 2003 and lived in until our divorce in 2020. I continued living there until last year.  The United States has since sold it.

The United States argues that Valerie Place should be forfeited because it was bought with funds that Bill made engaging in criminal fraud.  While I agree that the monthly mortgage payments from 2004 until the end of 2008 were paid by Bill with money he made by engaging in fraud, from 2009 until 2024 payments were made only with money derived from honest endeavors.  More importantly, none of the money that was used to buy Valerie Place initially was from fraud.

Prior to July 30, 2002, Bill's offense of conviction – 18 U.S.C. Section 1349 – did not exist. None of the money that constituted laundered funds supporting Defendant's conviction could be derived from activities occurring prior to July 30, 2002, because the laundered funds had to be from a specified unlawful activity. The only unlawful activity found by the jury was a violation of 18 U.S.C. Section 1349. None of the principal payments made on our prior home, 1305 North Windsor, were made with proceeds of the offense of conviction. *See* declaration of Karen Kearney, attached to the Local Rule 52.1 Response.

When he bought the house, my husband had a 30-year mortgage on 1305 North Windsor for $72,000. He made additional payments against the principal in the early years—before our marriage—so that it had been paid down to $40,955.44 as of the date we closed on 8 Valerie Place. This left proceeds from the sale of 1305 North Windsor of over $259,000.

Title IX of the *Sarbanes-Oxley Act of 2002*, Pub. L. 107-204, Title IX, § 902(a), 116 Stat. 745 (July 30, 2002) added 18 U.S.C. § 1349 to the Code, which is conspiracy to violate Chapter 63 of Title 18.  Bill was convicted of wire fraud conspiracy in violation of 18 U.S.C. §1349 and a money laundering conspiracy in violation of 18 U.S.C. §§ 1956(h), 1956(a)(1)(A), 1957(b), and 1957(d)(1).  Both §§ 1956 and 1957 require that the monetary transactions in which the defendant engaged or conspired to engage be derived from specified unlawful activity.  No matter that he was engaged in conduct that would have been a crime if 18 U.S.C. § 1349 had been in force. Until July 30, 2002, that conduct was not a violation of 18 U.S.C. § 1349 because 18 U.S.C. § 1349 did not exist.

We used about 80% of the proceeds from the sale of 1305 North Windsor for closing the purchase of 8 Valerie Place. However, Bill had paid down so much extra principal on 1305 North Windsor prior to our being married in 2001 that none of the proceeds from the sale of 1305 North Windsor were derived from conduct occurring after July 31, 2002.

Under New York law, we owned 8 Valerie Place as tenants by the entirety. we each owned 100% of the property. If one of us died before the other, the other would own the property free and clear of any encumbrances that may have been granted by the deceased party. V.R.W., Inc. v. Klein, 68 N.Y.2d 560, 563-64, 510 N.Y.S.2d 848, 850, 503 N.E.2d 496, 498 (1986) (both spouses have an equal right to possession of the property, and each has a right to demand that possession, as well as any profits yielded by the property, be shared... While these features of tenancies by the entirety are also characteristic of tenancies in common, the tenancy by the entirety is further distinguished by the fact that it confers on the surviving spouse a right to absolute ownership of the property upon the other spouse's death... What makes this right of survivorship unique and differentiates it from the right of survivorship inherent in an ordinary joint tenancy is that it remains fixed and cannot be destroyed without the consent of both spouses").

We bought the residence for $560,000.00, paid for with proceeds from the sale of Bill's 1305 North Windsor Avenue house, assistance from Bill's family, and a $200,000 mortgage. Bill and I (and later our children) lived at Valerie Place from 2003 to 2014.  After Bill went to prison, my children and I lived there until 2024, when we left pursuant to agreement with the United States. For the final 10 years, I was solely

3

responsible for the mortgage, utilities, taxes, upkeep and maintenance of the home. Bill and I divorced in 2020.

The United States argues that my petition "merely states, in a conclusory manner, that 8 Valerie Place "was purchased for $560,000, which was paid for with the proceeds from the sale of [the Kearney's] prior residence, 1305 North Windsor Avenue, Bay Shore, New York, [with] assistance from Defendant William Kearney's family, and by securing a mortgage in the amount $200,000.00." The United States asserts that "[s]ince title to the forfeitable property vests in the government immediately upon the commission of a criminal act, a third party may prevail under § 853(n)(6)(A) only by establishing that he had a legal interest in the forfeited property before the underlying crime was committed—that is, before the government's interest vested." *Memorandum in Support,* citing U.S. v Watts, 786 F.3d 152 (2nd Cir) at 166.

What the United States overlooks is that 21 U.S.C. § 853(n)(3) directs that "'[a]ll right, title, and interest in property. . . [subject to criminal forfeiture] vests in the United States upon the commission of the act giving rise to forfeiture.'" Watts, citing 21 U.S.C. § 853(c); see also Caplin & Drysdale, Chartered v. United States, 491 U.S. 617, 627, 109 S. Ct. 2646, 109 S. Ct. 2667, 105 L. Ed. 2d 528 (1989) ("[Section] 853(c) reflects the . . . long-recognized and lawful practice of vesting **title to any forfeitable assets**, in the United States, at the time of the criminal act...") Watts, 786 F.3d at 160 (emphasis added). That makes the question this: was any of the money used to close on Valerie Place a forfeitable asset?

I have shown the sources that the money used for the payment on 8 Valerie Place at closing came from sources other than Bill's engagement in the fraud. The United

4

States has not declared as an undisputed fact that Bill was paying the mortgage on 1305 North Windsor after July 30, 2002, and – as the loan closing document attached to my Local Rule 56.1 Response shows – he was very far ahead on paying down the principal on the mortgage. At that point, we had been married for over a year (without kids), and I was actively working.

To the extent that Bill's bank account at the time of closing contained money he had been paid both before and after July 30, 2002, only the amount traceable to after that date would be forfeitable. But that begs the question. None of that money paid any principal on the 1305 North Windsor Avenue mortgage after July 30, 2002.

The decision in United States v. Eldick, 223 Fed. Appx. 837, 840-41 (11th Cir. 2007) is not binding in this Circuit, and that is fortunate. The decision holds that "the government's interest will be superior to that of anyone whose interest does not antedate the crime." But that is not the law.  Rather, Caplin & Drysdale v. United States, supra, states the law, the "long-recognized and lawful practice of vesting title to any forfeitable assets in the United States, at the time of the criminal act giving rise to forfeiture.") If Valerie Place was not bought with criminally derived funds at the time of closing, then Bill and I had an interest – each owning an undivided 100% of the residence – that was superior to that of the United States. After Bill started paying the Valerie Place mortgage with the proceeds of his fraud, he forfeited his right to the United States, but my interest remained superior to that of the government.

This means that the United States stepped into Bill's shoes.  See United States v. Stern, Case No. 16-cr-525 (S.D.N.Y. Aug. 5, 2021), 2021 U.S. Dist. LEXIS 147436, at *11-12  (A "tenancy by the entirety cannot exist between unmarried parties ... The

5

touchstone of a tenancy by the entirety is a symmetric property ownership between married spouses; after the criminal forfeiture, that symmetry has been destroyed, and the tenancy by the entirety cannot continue ... And while Mr. Stern could have unilaterally severed the tenancy by the entirety by conveying his interest in the Subject Property through mortgage, gift, or sale, Mr. Stern could not have unilaterally destroyed Ms. Stern's survivorship right tied to his life. Accordingly, the Government's forfeiture of Mr. Stern's interest in the subject property functions similarly to a voluntary conveyance by Mr. Stern, in which the grantee - in this case the Government - and Ms. Stern each own an undivided half interest in the Subject Property as tenants in common, but with the Government owning a survivorship right tied to Ms. Stern's life and Ms. Stern owning a survivorship right tied to Mr. Stern's life.

Because I acquired my right to Valerie Place before it became a forfeitable asset, my right as a tenant by the entirety means, practically, that Valerie Place could not be sold unless both of us — the United States and me — agreed to sell it or I passed away.

## CONCLUSION

There remains a genuine issue of fact, whether any of the assets used to close the purchase of Valerie Place were proceeds of Bill's crime.  I have traced the origin of those assets and shown that they are not. Because assets acquired before the date on which Bill's conduct became unlawful, that is, July 30, 2002, are not forfeitable, and because I held the property as a tenant by the entirety, I was and remain entitled to an undivided half interest in the property that cannot be taken from me without my consent.

6

WHEREFORE, the United States's *Motion for Summary Judgment* should be denied.

Executed March 28, 2025        _____

Karen S. Kearney
38 Meroke Lane
East Islip, NY 11730
Telephone: 631-553-4902
Email: Karensuecsw@aol.com

The foregoing statements are true, under penalty of perjury.  Executed March 28, 2025.

_____
Karen Kearney