UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

     - against -                   CR 09-0168 (S-2)(DLI)

MICHAEL ROMANO and
WILLIAM KEARNEY

          Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

LOCAL RULE 56.1 RESPONSE OF KAREN KEARNEY

Pursuant to Rule 56.1 of the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York, Claimant Karen Kearney, pro se, submits the following responses:

**(A)  United States' Statement of Undisputed Material Facts:**

1.  Third Party Claimant Karen Kearney currently resides at 38 Meroke Lane, East Islip, New York 11730.

ADMITTED

2.  Kearney holds a graduate degree from Adelphi University as a Licensed Clinical Social Worker.

ADMITTED

1

3.      From 1995 to 1998, Kearney worked at The Life Balance Center and United Cerebral Palsy.

ADMITTED, except that Kearney continued to work at United Cerebral Palsy while maintaining a private practice until 2001. *See* declaration of Karen Kearney, this document.

4.      After 1998, Kearney began working in private practice at an office space located at 55 Carleton Avenue, East Islip 11730.

ADMITTED, except that Kearney did not move until the 55 Carleton Avenue office space until 2008. From 2003 to 2007, she maintained an office in her home at 8 Valerie Place, East Islip, New York. *See* declaration of Karen Kearney, this document.

5.      In 2001, Kearney earned a salary of approximately $25,000. Id. at p. 9.

ADMITTED

6.      In 2001, Kearney was married to Defendant William Kearney.

ADMITTED

7.      In 2001, Kearney resided with Defendant at 1305 North Windsor, Bay Shore ("1305 North Windsor").

ADMITTED

8.      Defendant purchased 1305 North Windsor for $115,000.

ADMITTED

9.      Defendant sold 1305 North Windsor in 2003.

ADMITTED

10.      Defendant and Kearney purchased the property at 8 Valerie Place, West Islip, New York ("8 Valerie Place") in 2003 for $560,000.

ADMITTED, except the address is East Islip, New York.

11.    The down payment for the purchase of 8 Valerie Place was funded in part by the sale of 1305 North Windsor, Defendant's family members, and a mortgage.

ADMITTED

12.    Approximately $30,000 of the down payment for the purchase of 8 Valerie Place was funded by Defendant's mother, Camille Kearney.

ADMITTED

13.    Approximately $289,000 of the down payment for the purchase of 8 Valerie place was funded by a mortgage.

ADMITTED

14.    Kearney shared one joint bank account with Defendant at HSBC.

ADMITTED

15.    In 2001, Defendant worked as a salesman at Wall Street Rare Coins.

ADMITTED

16.    The Company known as Wall Street Rare Coins underwent several name changes, including Northeast Gold and Silver and Atlantic Coin Galleries.

ADMITTED

17.    Northeast Gold and Silver was located at 654 Montauk Highway, Lindenhurst.

ADMITTED

18.    Kearney's salary would be deposited into her personal account.

ADMITTED

19.    Kearney also possessed a business account through Capital One.

ADMITTED

20.    Defendant sold 1305 North Windsor for approximately $300,000.

ADMITTED

21.    Kearney was not on the mortgage for 1305 North Windsor.

ADMITTED

22.    Kearney was not on Defendant's accounts at Citibank, Chase, Fidelity, ING, Smith Barney, or Wachovia.

ADMITTED

23.    Kearney did not work between 2006 and 2008.

ADMITTED

24.    Kearney was making about $20,000 annually from 2000 to 2014.

ADMITTED

25.    During the marriage to Defendant, Kearney paid for child care expenses.

ADMITTED

26.    During the marriage, Kearney paid bills for cell phone bills, utilities, or groceries.

ADMITTED

27.    Defendant paid the mortgage on 8 Valerie Place.

ADMITTED

4

28.     Kearney and William Kearney were divorced in September 2020.

ADMITTED

29.     Defendant continued to live at 8 Valerie Place until his surrender in 2014.

ADMITTED

30.     Kearney received financial help from her family and Defendant's mother

to make the mortgage payments after Defendant's surrender in 2014.

ADMITTED

**(B)     Additional statement of additional material facts as to which it is contended that there exists a genuine issue to be tried:**

1.     Prior to July 30, 2002, Defendant's offense of conviction – 18 U.S.C.

Section 1349 – did not exist. *See* declaration of Karen Kearney, this document.

2.     None of the money that constituted laundered funds supporting

Defendant's conviction were derived from activities occurring prior to July 30, 2002.

*See* declaration of Karen Kearney, this document.

3.     None of the principal payments made on 1305 North Windsor were made

with proceeds of Defendant's offense of conviction. *See* declaration of Karen Kearney,

this document.

4.     None of the proceeds of the sale of 1305 North Windsor were used in the

closing of the sale on 8 Valerie Place.  *See* declaration of Karen Kearney, this document.

### (C)    Declaration of Karen Keaney

I am Karen Kearney, third-party claimant in this matter. With respect to my work history, I continued to work at United Cerebral Palsy after 1998 while simultaneously beginning and maintaining a private practice.  This continued until 2001, at which time I left United Cerebral Palsy and engaged in private practice on a full-time basis.

I maintained an office outside the home until we bought 8 Valerie Place. I then moved my office into the home until my husband was arrested. I did not practice after 2006 – when our son was born - until my husband, William Kearney, was arrested. At that time, I obtained office space at 55 Carleton Avenue, where I have kept my office to this day.

The 30-year mortgage my husband had on 1305 North Windsor was for $72,000 when he bought the house. He made additional payments against principal in the early years – before our marriage – so that it had been paid down to $40,955.44 as of the date we closed on 8 Valerie Place. A true copy of a loan payoff statement for 1305 North Windsor is attached. This left proceeds from the sale of 1305 North Windsor of over $259,000.

This Court may take judicial notice that 18 U.S.C. § 1349 only passed into law in the *Sarbanes-Oxley Act of 2002*, Pub. L. 107-204, Title IX, § 902(a), 116 Stat. 745 (July 30, 2002). Title IX of that *Act,* § 902(a) (116 Stat. 805), and that prior to July 30, 2002, a conspiracy to violate Chapter 63 of Title 18 (§§1341-1351) was not a separate offense.

This Court may also take judicial notice that my husband was convicted of wire fraud conspiracy in violation of 18 U.S.C. §1349 and a money laundering conspiracy in violation of 18 U.S.C. §§ 1956(h), 1956(a)(1)(A), 1957(b), and 1957(d)(1). See DE 168; DE

295. The Court may further judicially notice that both §§ 1956 and 1957 require that the monetary transactions in which the defendant engaged or conspired to engage be derived from specified unlawful activity.

About 80% of the proceeds from the sale of 1305 North Windsor were needed for closing the purchase of 8 Valerie Place. None of the proceeds from 1305 North Windsor were derived from the proceeds of my husband's illegal activity.

The foregoing statements are true, under penalty of perjury.  Executed March 28, 2025.

_____

Karen Kearney

7

```
PAYOFF STATEMENT                         DATE: June 05, 2003
LOAN NO:    0602790229                   LOAN TYPE:  Conventional
NAME:                                    HAZ INS PAID YTD:$        594.00
William E Kearney                        TAXES PAID YTD:  $       2,849.96
1305 N Windsor Ave                       PROPERTY ADDRESS:
Bay Shore, NY 11706-

                                         1305 N Windsor Ave
TO:                                      Bay Shore NY 11706


William E Kearney
1305 N Windsor Ave
Bay Shore, NY 11706
```

```
PRINCIPAL BALANCE AS OF June 05, 2003 ...........$      40,955.44

INTEREST DUE AT  7.12500% ........................$        191.87
   FROM June 01, 2003 TO June 25, 2003
   PER DIEM....$ 7.99 FROM June 25, 2003 TO THE
   DAY PAYOFF FUNDS ARE RECEIVED BY ABN AMRO
UNPAID LATE CHARGES ..............................$            .00
RECORDING DISCHARGE/RELEASE OF LIEN FEE ..........$          64.50

TOTAL CHARGES DUE.................................$          64.50

LESS CURRENT ESCROW BALANCE ......................$        -458.77

TOTAL AMOUNT TO PAY LOAN IN FULL .................$      40,753.04
PRIORITY PROCESSING FEE...........................$          20.00
UNPAID NSF CHARGES ...............................$            .00
ADJUSTED TOTAL....................................$      40,773.04
```

```
A LATE CHARGE OF $ 13.04 WILL BE ASSESSED 16 DAYS AFTER A CURRENT
PAYMENT IS PAST DUE AND SHOULD BE ADDED TO THE PAYOFF AMOUNT.

*SEE REVERSE SIDE FOR IMPORTANT INFORMATION OR FOR FAX TRANSMITTALS
PLEASE SEE ATTACHED.

SEND PAYOFF CHECKS TO ADDRESS BELOW:    SEND LIEN RELEASE ITEMS TO:
ABN AMRO MORTGAGE GROUP, INC.           ABN AMRO MORTGAGE GROUP, INC.
ATTN: WHOLESALE LOCKBOX DEPT 6400       ATTN:LIEN RELEASE DEPT XFL6-00
200 WEST MONROE, SUITE 200              7159 CORKLAN DRIVE
CHICAGO, ILLINOIS  60606                JACKSONVILLE, FL 32258
                                        XP001/096/ECE
```

 ABN·AMRO

ABN AMRO Mortgage Group, Inc.
800/783-8900

Affiliates:
Standard Federal Bank N.A.
LaSalle Bank N.A.
LaSalle Home Mortgage