UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA                    :

            - v -                    :      **MEMORANDUM DECISION**

WILLIAM KEARNEY,                    :      22 Civ. 03385 (DC)
                                       09 Cr. 00168 (DC)
                Defendant.          :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**APPEARANCES:**          JOSEPH NOCELLA, JR., Esq.
                                United States Attorney for the
                                Eastern District of New York
                                    By:     Irisa Chen, Esq.
                                             Assistant U.S. Attorney
                                271 Cadman Plaza East
                                Brooklyn, NY 11201

                                WILLIAM KEARNEY
                                Petitioner *Pro Se*
                                654 West Montauk Highway
                                Lindenhurst, NY 11757

**CHIN, Circuit Judge:**

         Defendant William Kearney, appearing *pro se*, moves pursuant to 28

U.S.C. § 2255 to vacate, set aside, or correct his sentence on the grounds that he received

ineffective assistance of counsel at trial, at sentencing, and on appeal.  Dkt. 645 at 1.

         On June 13, 2011, a jury found Kearney and his co-defendant Michael

Romano guilty in the United States District Court for the Eastern District of New York

(Bianco, *J.*) of one count of conspiracy to commit mail and wire fraud, 18 U.S.C. § 1349

("Count 1"), and one count of conspiracy to commit money laundering, *id.*
§§ 1956(a)(1)(A)(i) and 1956(h) ("Count 2").  Dkt. 661-19 at 3055-56; *United States v. Romano*, 859 F. Supp. 2d 445, 450 (E.D.N.Y. 2012).  The trial court denied Kearney and Romano's subsequent motion for acquittal and a new trial on May 3, 2012.  *See Romano*, 859 F. Supp. 2d at 467.  On November 22, 2013, the district court (Johnson, *J.*) held a *Fatico* hearing on Kearney and Romano's objections to the Probation Department's proposed sentencing enhancements.  Dkt. 398 at 2-3.  On March 10, 2014, the court sentenced Kearney to 156 months' imprisonment on each count, to run concurrently -- a downward departure from the guidelines range of 188 to 235 months.  Dkt. 581 at 26-28.

Kearney and Romano appealed to the Second Circuit.  On July 27, 2015, the Second Circuit affirmed the judgments and sentences, though it remanded the matter as to restitution and forfeiture.  *See United States v. Romano*, 794 F.3d 317, 341 (2d Cir. 2015).  On April 28, 2022, Romano filed a motion to vacate, set aside, or correct his sentence under § 2255, *see* Dkt. 633, and on May 2, 2022, Kearney filed a motion to adopt Romano's § 2255 petition, *see* Dkt. 636.  On May 6, 2022, the district court (Irizarry, *J.*) denied Kearney's motion without prejudice and directed Kearney to file his own § 2255 motion.  May 6, 2022 Order.

Kearney thereafter filed the instant motion.  He seeks to vacate, set aside, or correct his sentence under § 2255 based on two failures by trial counsel: (1) trial counsel's failure to seek a limiting instruction precluding the jury from considering

2

conduct preceding July 30, 2002, the effective date of the statute criminalizing conspiracy to commit mail or wire fraud, 18 U.S.C. § 1349; and (2) trial counsel's failure to seek a sentence of ten years or fewer on Count 2, when the jury returned a general guilty verdict and did not specify whether it was convicting Kearney of acts carrying a twenty-year maximum sentence or acts carrying a ten-year maximum.  Dkt. 645 at 16. Kearney also contends that his appellate counsel provided inadequate assistance, for failing to raise trial counsel's deficiencies on appeal.  *Id.* at 1.

On September 30, 2025, I denied Romano's § 2255 motion.  *See United States v. Romano*, No. 22 Civ. 2444 (E.D.N.Y. Sept. 30, 2025).

For the reasons that follow, the present motion is DENIED as well.

## BACKGROUND

### I.    *The Facts*

The Second Circuit's opinion on direct appeal lays out the facts of the case and reviews the government's evidence at trial.  *Romano*, 794 F.3d at 321-29.  I also summarized the facts in my decision denying Romano's motion.  I summarize the facts again here, focusing on Kearney.

From 1994 until 2008, Kearney and Romano worked closely to pull off a scheme in which they defrauded hundreds of customers, including many elderly victims, by purporting to sell them valuable coins.  Kearney was a salesman and sales manager at three successive companies owned by Romano, as well as a 50-percent

3

owner of the third company, the Northeast Gold and Silver, which operated from September 2008 to November 2008.  Kearney, Romano, and the companies' sales force profited from selling the coins, which they accomplished by misrepresenting the coins' grade, value, and profitability.  Kearney and Romano's victims lost tens of millions of dollars to the scheme.  *See Romano*, 794 F.3d at 322-26, 338; *see also* Dkt. 676 at 2; Dkt. 581 at 23; Dkt. 661-15 at 2627; Dkt. 581 at 13-14.

Kearney "closely supervised the companies' sales forces" and, using an alias, made sales calls himself as well.  *Romano*, 794 F.3d at 324.  As the sales manager, Kearney trained the salesmen, gave them sales pitches, fed them lines during calls, and closely monitored what they said.  *Id.* at 324.  These "company-approved sales pitches contained numerous false representations, with salesmen stating that they were offering bargains . . . when in fact the quality of the offered coins was simply lower than represented." *Id*.  Kearney also instructed the salesmen to inform customers they could gather a "set premium" by collecting a complete set of certain coins, worth "anywhere from five to 50 percent above the total value of the coins individually." *Id*.  In fact, Kearney instructed the salesmen to never let the customers complete the set "so the customer would always have to buy more." *Id.* at 325.  Kearney also told customers, and directed salesmen to tell customers, that the companies had three in-house graders who graded the coins in accordance with the highest standards.  In reality, Romano functioned as the only "grader" and did not inspect the coins. *Id*. at 325.  Kearney and

4

his salesmen "regularly told customers that owning the coins would be profitable," despite knowing that the companies falsely inflated the coins' value. *Id*. Kearney additionally trained his salesmen to promise customers assistance if they ever wanted to sell the coins in the future, then to avoid ever actually providing such assistance. *Id*. at 326.

Almost every fact witness at trial testified to conduct occurring after July 30, 2002. See Dkt. 676 at 7 & n.9. For example, starting in 2005, Donna Lutz made various purchases from Romano's companies, including a coin for $2,495, three Walking Liberty half-dollars for $1,185, three more Liberty half-dollars for $1,415, a gold piece for $1,895, two more Liberty half-dollars for $1,320 from Northeast Gold and Silver, and three Morgan silver dollars for $1,390 from Northeast Gold and Silver. Dkt. 661 at 655-72. From September 2007 until April 2008, Terry Rindal paid tens of thousands of dollars for coins from one of the companies. Dkt. 661-11 at 1900, 1907, 1912. Frank Ruggles, who was 77 years old at the time of trial (2011), bought coins from the companies from March 2007 to June 2008, in pursuit of a "set" that company salesmen assured him held greater value than individual coins. Dkt. 661-10 at 1864-65. Others, too, purchased coins from the companies after July 30, 2002, several in amounts

upwards of $140,000.  *See* Dkt. 661 App'x A (Summary Table of Fact Witnesses'

Testimony); Dkt. 661-5 at 945; Dkt. 661-7 at 1322.[1]

Between 2000 and 2008, Romano's companies -- including the one of

which Kearney was part-owner -- sold coins to over 1,450 customers, generating

approximately $32 million in revenue.  Of that sum, Kearney personally benefitted to

the tune of about $3.9 million.  *Romano*, 794 F.3d at 326-27.

## II.    *Prior Proceedings*

The prior proceedings are summarized above.  Before addressing

Kearney's arguments about his trial counsel's ineffectiveness at trial and at sentencing, I

briefly discuss the sentencing hearing before Judge Johnson on March 10, 2014.

At sentencing, Kearney's counsel requested a sentence of less than ten

years' imprisonment, though not on the grounds Kearney now contends counsel should

have argued.  Dkt. 581 at 20.  After hearing from Kearney, defense counsel, and the

government, the district court stated that he was going to sentence the defendant to 156

months of imprisonment, followed by three years of supervised release.  *Id.* at 26.  This

decision reflected a downward departure from the sentencing guidelines range of 188 to

235 months' imprisonment.  *Id.* at 6, 28.

---

[1]    Romano and Kearney's salesmen and other company employees, who provided services
after July 30, 2002, also testified at trial.  *See* Dkt. 661 App'x A.

At no point before or during trial or at sentencing did defense counsel argue that Kearney's conduct preceding the effective date of the mail fraud conspiracy statute should not be considered.  Dkt. 676-1 ¶¶ 3-4.[2]  Defense counsel also did not request a special verdict on Count 2 or object, based on the general verdict, to a sentence exceeding ten years.  *Id*. ¶ 5.  On appeal to the Second Circuit, appellate counsel did not raise these purported errors of trial counsel, though he did raise other sentencing issues and challenges to the conviction.  *See Romano*, 794 F.3d at 321, 329-30, 336-40.

## III.    *The Instant Motion*

In the instant motion, Kearney seeks relief pursuant to § 2255 on ineffective-assistance-of-counsel grounds.  Dkt. 645.  He argues that both trial counsel and appellate counsel provided ineffective assistance.  The government opposed the motion on September 8, 2022.  Dkt. 676.  Kearney filed a reply on October 11, 2022.  Dkt. 681.

The case was reassigned to the undersigned on August 1, 2025.

---

[2]      Kearney's counsel explained that he and Romano's counsel did not "investigate the enactment date of the statute" because they believed that "the conspiracy charged was a continuing one and that all of the bad conduct that was within the conspiracy was properly charged."  Dkt. 676-1 ¶ 4.

## DISCUSSION

### I.     Applicable Law

"[A] collateral attack on a final judgment in a federal criminal case is
generally available under § 2255 only for a constitutional error, a lack of jurisdiction in
the sentencing court, or an error of law or fact that constitutes 'a fundamental defect
which inherently results in a complete miscarriage of justice.'"  *United States v. Bokun*, 73
F.3d 8, 12 (2d Cir. 1995) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)); *accord
United States v. Hoskins*, 905 F.3d 97, 102 (2d Cir. 2018); *Graziano v. United States*, 83 F.3d
587, 589-90 (2d Cir. 1996).

Sixth Amendment right-to-effective-assistance-of-counsel claims require a
defendant to (1) establish that counsel's performance was so deficient as to fall below
"an objective standard of reasonableness," such that the omissions "were outside the
wide range of professionally competent assistance," and (2) demonstrate that the
deficient performance prejudiced the defendant, giving rise to a "reasonable probability
that, but for counsel's unprofessional errors, the result of the proceeding would have
been different."  *Strickland v. Washington*, 466 U.S. 669, 688, 690, 694 (1984).  A reasonable
probability "is a probability sufficient to undermine confidence in the outcome."  *Id.* at
694.  "The likelihood of a different result must be substantial, not just conceivable."
*Harrington v. Richter*, 562 U.S. 86, 112 (2011).  In making this determination, courts

8

hearing ineffectiveness claims must "consider the totality of the evidence" presented to the judge or jury. *Strickland*, 466 U.S. at 696.

The two-part *Strickland* test is "rigorous." *Lindstadt v. Keane*, 239 F.3d 191, 199 (2d Cir. 2001). For a *Strickland* claim to survive, counsel's conduct must have "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

## II.    *Application*

First, I address the two alleged errors of trial counsel: (1) the failure to request a limiting instruction regarding conduct preceding the effective date of the conspiracy statute; and (2) the failure to object to the sentence on Count 2. Second, I address the alleged failures of appellate counsel

### A.    *Trial Counsel*

#### 1.    *The Effective Date of the Conspiracy Statute*

Kearney was convicted on Count 1 of violating the mail and wire fraud conspiracy statute, 18 U.S.C. § 1349, which became effective July 30, 2002. Trial counsel did not request an instruction limiting the jury's consideration of conduct prior to the effective date of the statute. Kearney contends that this failure amounted to ineffective assistance of counsel in violation of the Sixth Amendment. I am not persuaded.

Even assuming trial counsel's failure to request an instruction was so deficient as to fall below an objective standard of unreasonableness, Kearney has not

9

shown a reasonable probability that, but for this omission, the outcome of the trial

would have been different.  His claim thus fails on the second prong of the *Strickland*

two-part test.

        First, the Second Circuit's precedents establish that "continuing offenses

such as conspiracy . . . do not run afoul of the *Ex Post Facto Clause* if the criminal

offenses continue after the relevant statute becomes effective."  *United States v. Duncan*,

42 F.3d 97, 104 (2d Cir. 1994).  Thus, when a continuing offense violates a statute, the

statute may be applied "to an enterprise that began prior to, but continued after, the

effective date of the statute."  *United States v. Harris*, 79 F.3d 223, 229 (2d Cir. 1996)

(alterations accepted).  Second, Rule 404(b) permits using evidence of pre-enactment

conduct to show, for example, the genesis of the conspiracy, its purpose, the

coconspirators' relationship, and the operations over time.  *See United States v. Monaco*,

194 F.3d 381, 386 (2d Cir. 1999) ("When it is shown that a conspiracy straddled the

enactment of a statute, the government may introduce pre-enactment evidence to

demonstrate the conspiracy's genesis, its purpose, and its operation over time."); *United

States v. Smith*, 464 F.2d 1129, 1133 (2d Cir. 1972) ("It is well established that evidence of

the prestatutory behavior of the conspirators even though innocent is admissible.").

Third, the government offered ample evidence at trial of conduct post-dating July 2002.

In fact, nearly every single fact witness at trial, except one company salesperson,

testified about conduct occurring after July 2002.  *See* Dkt. 661 App'x A; *see also Smith*,

10

464 F.2d at 1136 ("The post-enactment transactions here demonstrate the continuing criminal partnership . . . . There was 'continuity of action' here sufficient to indicate that the conspiracy was continuous."); United *States v. Marcus*, 628 F.3d 36, 42 (2d Cir. 2010) ("[T]he Government presented post-enactment evidence sufficient to satisfy the elements of the forced labor statute.").  Finally, there existed no "reasoned basis to differentiate between [Kearney's] pre- and post-enactment conduct," and therefore Kearney has not shown "a reasonable probability that the jury would not have convicted him" had Kearney's counsel requested a limiting instruction.  *Id*. at 43.

Accordingly, I reject Kearney's argument that he was denied effective assistance of counsel and a fair trial because of trial counsel's failure to request a jury instruction limiting the use of evidence of pre-enactment conduct.  *See id*. at 40, 42 (holding no prejudicial error where trial court failed to instruct jury regarding criminal statute's enactment date).[3]

### 2.    *The Sentence on Count 2*

Kearney was also convicted on Count 2 of violating the money laundering statute, 18 U.S.C. §§ 1957(a) and 1956(h).  The statute carries two possible maximum

---

[3]    In *Marcus*, the Second Circuit vacated the defendant's sex trafficking conviction but affirmed the forced labor conviction.  *Id*. at 43-44.  The defendant brought a § 2255 motion challenging the forced labor conviction for, *inter alia*, ineffective assistance of counsel with respect to the straddling issue.  The District Court for the Eastern District of New York denied the motion in all respects.  *See Marcus v. United States*, No. 14-CV-5780 (ARR), 2015 WL 3869689, at *22 (E.D.N.Y. June 22, 2015).

sentences: (a) twenty years for conducting financial transactions knowingly involving proceeds of mail and wire fraud, 18 U.S.C. § 1956(a)(1)(A)(i), and (b) ten years for engaging in a monetary transaction in property valued at $10,000 or more derived from unlawful activity, 18 U.S.C. §§ 1957(a) and 1956(h).  Kearney's trial counsel did not request a special verdict.  Dkt. 676-1 ¶ 5.  Kearney contends that his trial counsel was constitutionally defective by failing to object to a twenty-year sentence on Count 2, even though the jury's general verdict form did not specify under which provision it found Kearney guilty.  Dkt. 645 at 28.  I find this claim similarly meritless.

The record clearly shows that Kearney was guilty under at least the first money laundering provision, *i.e.*, conducting financial transactions knowingly involving proceeds of mail and wire fraud.  The record demonstrates that Kearney, and the salesmen he trained and supervised, conducted numerous telephone calls and money transfers.  The scheme garnered approximately $32 million, including $3.9 million that Kearney personally received.  *Romano*, 794 F.3d at 323-27; *see also id*. at 321 (observing that Kearney and Romano were both convicted of "conspiracy to engage in money laundering, in violation of 18 U.S.C. §§ 1956(a)(1)(A)(i) and 1956(h)").  Kearney was also convicted of wire and mail fraud conspiracy on Count 1.  Kearney puts forth no persuasive arguments that he would have seen a different outcome had his counsel requested a special verdict or raised the issue at sentencing.

Furthermore, Kearney was sentenced to a *concurrent* 156-month sentence for his Count 1 conviction. Even if trial counsel had objected to the sentence on Count 2, Kearney's Count 1 sentence would have remained the same. *See United States v. Henry*, 325 F.3d 93, 101 (2d Cir. 2003) ("[A]n erroneous sentence on one count of a multiple-count conviction does not affect a defendant's substantial rights where the total term of imprisonment remains unaffected."); *United States v. Outen*, 286 F.3d 622, 639-40 (2d Cir. 2002). Thus, Kearney has not shown a "fundamental defect which inherently results in a complete miscarriage of justice," *Bokun*, 73 F.3d at 12, because he was properly sentenced to a concurrent term of 156 months' imprisonment on Count 1.

**B.    *Appellate Counsel***

Finally, Kearney argues that his appellate counsel was constitutionally ineffective for failing to raise the above issues and for failing to raise trial counsel's ineffectiveness. Dkt. 645 at 13. This claim likewise fails.

We use the two-part *Strickland* test for ineffective assistance claims involving appellate counsel. *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994) ("[T]he same test is used with respect to appellate counsel."). In demonstrating appellate counsel's ineffectiveness, "it is not sufficient for the habeas petitioner to show merely that counsel omitted a nonfrivolous argument, for counsel does not have a duty to advance every nonfrivolous argument that could be made." *Id*. Typically, "only when ignored issues are clearly stronger than those presented, will the presumption of

13

effective assistance of counsel be overcome." *Id.* (quoting *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1985)).

Here, appellate counsel's tactical choices on appeal, including the decision not to raise the issues presented on this motion, do not constitute ineffective assistance. Kearney's claims raised here lack merit, and appellate counsel reasonably focused on other issues instead. *See Aparicio v. Artuz*, 269 F.3d 78, 100 (2d Cir. 2001) ("Petitioner's appellate counsel was not ineffective for failing to raise the meritless argument."); *see also United States v. Arena*, 180 F.3d 380, 396 (2d Cir. 1999) ("Failure to make a meritless argument does not amount to ineffective assistance."). Moreover, appellate counsel raised several meritorious challenges to Kearney's conviction and sentencing, as discussed in the Second Circuit's thorough opinion. Indeed, Kearney and Romano's appellate counsel secured a remand on the issues of restitution and forfeiture. *See Romano*, 794 F.3d at 340-41. Thus, Kearney has not demonstrated that the "ignored issues are clearly stronger than those presented." *Mayo v. Henderson*, 13 F.3d at 533. Kearney has also not shown, under the second *Strickland* prong, that he was prejudiced by his appellate counsel's decisions.

## CONCLUSION

For the reasons set forth above, Kearney's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 is DENIED in all respects. The Court declines to issue a certificate of appealability, as Kearney has not made a substantial

showing of a denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2).  The Court

certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be

taken in good faith and thus denies *in forma pauperis* status should Kearney appeal.  *See*

*Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).  The Clerk of Court is respectfully

directed to enter judgment and close the civil case, No. 22 Civ. 3385, and to mail a copy

of this Memorandum and Order to Kearney at his last known address.

        SO ORDERED.

        Dated:        Brooklyn, New York
                    October 9, 2025

                                        DENNY CHIN
                                        United States Circuit Judge
                                        Sitting by Designation